UNITED STATES of America,

v.

James D. McINNIS,

No. CRIM.02–CR–05–P–C.

United States District Court,
D. Maine.

Nov. 19, 2004.

Helene Kazanjian, Office of the U.S. Attorney, District of Maine, Jonathan R.

Chapman, Office of the U.S. Attorney, District of Maine, Portland, ME, for USA, Plaintiff.

Mary A. Davis, Tisdale & Davis, Robert C. Andrews, Law Office of Robert C. Andrews, Portland, ME, for James D McInnis (1), Defendant.

### MEMORANDUM OF DECISION AND ORDER REVOKING DEFENDANT'S SUPERVISED RELEASE FOR A GRADE A VIOLATION

GENE CARTER, Senior District Judge.

Before the Court for action is the Amended Petition for Warrant or Summons for Offender under Supervision (Docket Item No. 39). The Petition sets out five alleged violations by the Defendant of various conditions of his Supervised Release. At a hearing on the Petition on October 13, 2004 the Defendant admitted to Violations 1, 2, 3, and 5 as charged in the Petition. Violations 1, 2, and 5 are Grade C violations and Violation 3 is a Grade B violation. The Defendant disputes only Violation 4, which is either a Grade A or Grade B violation under the Sentencing Guidelines. The Defendant admits to the facts of Violation 4, but contends that his Supervised Release should not be revoked on that basis because he voluntarily gave Deputy U.S. Marshal Galvin information in reliance on a promise by Galvin that he would not prosecuted which lead to the discovery and seizure from his possession of more than a pound of marijuana, possession of which is the substantive element of the violation.

At the hearing various witnesses testified, both for the Government and the Defendant. The testimony was conflicting on the factual issue of whether Deputy U.S. Marshal Galvin elicited from the Defendant information which lead to the discovery and seizure of the marijuana by making to the Defendant a promise that the Defendant would not be prosecuted if he disclosed the whereabouts of the marijuana. Marshal Galvin adamantly denied that he had made any such promise. The only contradicting testimony was given by Defendant's girlfriend, Dee Cheat.[1] I disbelieve Ms. Cheat's testimony in respect to the making of such a promise. I deduce from her attitude and demeanor on the witness stand that her testimony on the point is not credible because she is dedicated to helping the Defendant, with whom she has a close personal relationship, avoid a revocation on the basis of his possession of over one pound of marijuana. I find Deputy Marshal Galvin's denial that he made such a promise to be fully credible and consistent with the evidence of the incident that resulted in the discovery of marijuana. No credible reason is established in the evidence as to why Marshal Galvin would make such a promise. As a trained federal law enforcement officer, he would, and did, I find, clearly understand that the making of such a promise would jeopardize the use, after seizure, of the marijuana as evidence and perhaps even vitiate the conduct of the entire enforcement exercise in which he was then engaged.

Further, I *CONCLUDE* that, as a matter of law, Marshal Galvin had no authority, express, actual or implied, to make an enforceable promise of the nature claimed. *United States v. Flemmi*, 225 F.3d 78 (1st Cir.2000). The Marshal Service is an investigatory arm of the Department of Jus-

---

1. Other friends of the Defendant, who were also present in the apartment when the officers arrived there, testified that another U.S. Marshal made a similar promise to them. I reject those claims for lack of credibility due to the self-interest and bias of these witnesses. I do not believe any U.S. Marshal made any such promise to any of those persons.

tice. It is not a prosecutorial agency such as the United States Attorney's Office. It is without any authority deriving from its investigatory role, even when its activities complement or underlie the activities of the U.S. Probation Office or the United States Attorney's Office, to make promises to suspects that are binding upon the prosecutor or the probation office.

"The short of it is that the power to prosecute plainly includes the power not to prosecute...whereas the power to investigate does not necessarily encompass (or even reasonably imply) the power to grant use immunity."

*Id.* at 87. This principle, applied to agents of the Federal Bureau of Investigation in *Flemmi,* is equally applicable to the Deputy United States Marshals involved in the circumstances of this case. Further, there is not any evidence whatever that any prosecutor or probation officer gave, by implication or otherwise, Marshal Galvin any basis to believe that he had any authority whatsoever to make any promise of use immunity to the Defendant, or to anyone else. It is clear that any such promise made independently by him or any other Deputy U.S. Marshal would have exceeded the scope of such officer's actual authority and would be unenforceable even if made. *Id.* at 80.

Accordingly, I *FIND* the Defendant was, on the occasion in question, in possession of over one pound of marijuana, and that he did possess it with intent to distribute. I *CONCLUDE* that this conduct was a violation of Special Condition No. 1 of the terms and conditions of his term of Supervised Release as a violation of 17–A M.R.S.A. § 1103(3)(A), a Class C Felony under Maine state law punishable by up to five (5) years of imprisonment as alleged in the Petition herein. The evidence at the hearing establishes by a preponderance of that evidence that the Defendant pos-

sessed a distributable amount of marijuana. I *CONCLUDE* that his term of Supervised Release must be, and it is hereby *REVOKED* pursuant to U.S.S.G. § 7(B)(1.3)(a)(1).

It is hereby *FURTHER ORDERED* that the customary Revocation Report be filed and that the matter be seasonably scheduled for a hearing for the determination and imposition of sentence.